IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| JORDAN MIDDIEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JET.COM | ) | |
| Serve Registered Agent At: | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street | ) | |
| Suite 3C | ) | |
| Topeka, KS 66603 | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Jordan Middien (hereinafter "Plaintiff") by and through his undersigned counsel and for his Complaint against Defendants Jet.Com (hereinafter "Defendant") alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, residing in Spring Hill, Johnson County, Kansas and, at all times pertinent to this Complaint for Damages, was an "employee" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* as amended ("ADA") and the Kansas Workers Compensation Act, K.S.A. 44–501 *et seq.*.

2. Defendant is a for-profit corporation organized under the laws of the State of Delaware. Defendant has been operating and existing continuously within the State of Kansas, having its registered agent located at: The Corporation Company Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.  At all times pertinent to this Complaint for Damages,

Defendant was an "employer" within the meaning of the ADA and the Kansas Workers Compensation Act, K.S.A. 44–501 *et seq.*.

3. This is an employment discrimination and retaliation lawsuit based upon and arising under the ADA and a Workers' Compensation Retaliation lawsuit based upon and arising under and Kansas common law.

4. All the unlawful acts and practices set forth below were committed within Johnson County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

5. At all times pertinent to this complaint, Defendants maintained a location at 30801 West 191st Street, Gardner, KS 66030 where it employed more than one hundred (100) employees.

## Administrative Procedure and Procedural Posture

6. On or about September 28, 2017 Plaintiff filed a Charge of Discrimination against Defendant with Kansas Human Rights Commission ("KHRC") which was dually filed with the EEOC alleging discrimination on the basis of Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, failure to accommodate, and unlawful retaliation (attached as Exhibit A and incorporated by reference as if fully set forth herein).

7. On or about November 27, 2017, Plaintiff timely filed an Amended Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, failure to accommodate, and unlawful retaliation (attached as Exhibit B and incorporated by reference as if fully set forth herein).

8. On or about April 30, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue (attached as Exhibit C and incorporated by reference as if fully set forth herein).

9. The aforesaid Charges of Discrimination provided the EEOC and KHRC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC and KHRC investigation of Plaintiff's claims and the involved parties, which could reasonably be expected to have grown out of the Charges of Discrimination.

10. Through the filing of Plaintiff's Charges of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

11. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

### General Allegations Common to All Counts

12. Plaintiff was an employee of Defendant from approximately August of 2016 until approximately June of 2017, when his employment was terminated.

13. Plaintiff performed work for Defendant at its facility located at 30801 West 191st Street, Gardner, Johnson County, Kansas.

14. Plaintiff began working for Jet.com as a Distribution Fulfillment Associate in August 2016 after being placed in that position by a temporary employment agency.

15. In or about November 2016, based on Plaintiff's good job performance, Plaintiff was offered full-time employment by Defendant as a Distribution Fulfillment Associate. Plaintiff accepted that position.

16. Plaintiff had excellent performance numbers and never received any write-ups or other disciplinary action.

17. In or about January 2017, Plaintiff injured his back on the job resulting in the permanent condition of bulging disks and lumbar disk disease which affects Plaintiff's ability to work and affects his overall physical well-being.

18. Plaintiff's back condition, at all times pertinent to this Complaint, did and continues to affect his major life activities, including lifting, bending, exercise, sleeping, and working.

19. At the time of the foregoing injury, Plaintiff immediately reported it to his manager, Matt, who told Plaintiff he would "take care of it" and would "fill out a report".

20. Several witnesses observed this conversation.

21. Matt's employment with Defendant ended approximately a week after Plaintiff's injury.

22. On or about February 6, 2017, Plaintiff had an appointment with his physician who ordered an MRI to be performed on February 9, 2017.

23. On or about February 14, 2017, Plaintiff's physician's office called Plaintiff regarding the results of his MRI and instructed him to immediately stop any physical activity and to make an appointment for follow up.

24. Plaintiff immediately informed his manager, Cole Harper, Process Manager, of the MRI and exam results, of the fact that he had been ordered by his physician not to perform any physical activity, and that he was in a great deal of pain.

25. Despite the physician's orders, Mr. Harper instructed Plaintiff to keep working at his position, which included physical activity, and told Plaintiff that he would try to contact Human Resources.

26. Plaintiff was informed that if he failed to finish work that day, he would be terminated.

27. Following the notification of Plaintiff's work restrictions on or about February 14, 2017, Defendants began to overly-scrutinize Plaintiff's work and Plaintiff's manager would constantly stand over him and watch him work.

28. On or about February 15, 2017, Plaintiff's physician provided him with a note explaining Plaintiff's physical restrictions as well as stating that Plaintiff needed to be off work for two weeks until February 26, 2017, with minimal bending, lifting, and twisting after that date.

29. Plaintiff provided his manager, Cole Harper, and manager, Ed, with the physician's note which included the request for accommodation of minimal bending, lifting, and twisting.

30. After reading the note, Cole and Ed instructed Plaintiff to give the note to the Safety Manager, Quincy Usry.

31. After reading the note, Mr. Usry scanned the physician's note, filled out an injury report and informed Plaintiff that Human Resources would contact Plaintiff.

32. Plaintiff reminded Mr. Usry that Plaintiff's manager, Matt, had told Plaintiff he would fill out a report at the time of Plaintiff's January 2017 injury.

33. Mr. Usry informed Plaintiff that he had not received a report completed by Matt about Plaintiff's January 2017 injury.

34. On or about February 26, 2017, Plaintiff reported to work to speak to a representative from Human Resources because no one had ever contacted him about his leave.

35. The Human Resources representative was not in the office that day, so Plaintiff spoke to his Manager, Cole Harper, about his leave.

36. Mr. Harper told Plaintiff that Human Resources had never spoken to him about the incident.

37. Despite the physician's note limiting Plaintiff's ability to bend, lift, and twist, Plaintiff was told he would need to work a full day on February 26, 2017, or he would be terminated. Plaintiff worked the entire day February 26, 2017, while in significant pain, and was not allowed to limit his bending, lifting, and twisting.

38. On or about February 27, 2017, Plaintiff reported to work and went to Human Resources where he spoke with Chelsea Davidson and Christine who informed Plaintiff they had never received any physician's note and were unaware of the situation.

39. During that February 27, 2017 meeting, Plaintiff informed Chelsea and Christine in Human Resources that he had reported his injury to his supervisor, Matt, in January when the injury occurred and had witnesses to that conversation, as well as having reported the injury to Safety Manager, Quincy Usry. Plaintiff was told that Human Resources would speak with Mr. Usry.

40. After it was determined that Mr. Usry was out of the office on vacation, Plaintiff was allowed to leave work to obtain another copy of his physician's note at his physician's office.

41. At that February 27, 2017 meeting, Plaintiff also discussed with Chelsea and Christine of Human Resources, that his on-the-job injury and resulting medical leave should be considered a Workers' Compensation claim.

42. On or about February 27, 2017, within two (2) hours after leaving Human Resources, Plaintiff received an email from Chelsea Davidson of Human Resources stating that Plaintiff was being terminated, effective that day, for violation of the attendance policy on February 15, 2017. Plaintiff did not see the email until February 28, 2017.

43. The termination email dated February 27, 2017, also stated that if Plaintiff applied for short-term disability within 15 days and was approved, that he would be reinstated.

44. On or about February 28, 2017, unaware of the foregoing email, Plaintiff returned to work and supplied the requisite physician's note to Human Resources, at which time Plaintiff was informed about the foregoing email.

45. Human Resources reiterated to Plaintiff that if he was approved for short-term disability then he would be reinstated.

46. On or about March 14, 2017, Plaintiff completed his application for short-term disability which was approved on or about May 2017.

47. In or around June 2017, Plaintiff asked Defendant whether he could use his company discount card and whether he could use the gym while on short-term disability to perform the exercises his physician had recommended.

48. In response to Plaintiff's inquiries, Plaintiff was told by Defendant that Plaintiff should not have been approved for short-term disability and that he was terminated.

49. Plaintiff went to Human Resources to find out why he was approved for short-term disability and then was told he was not approved for short term disability and was terminated instead.

50. Defendant informed Plaintiff that he was terminated based on violation of the attendance policy. When Plaintiff asked why another individual who had used all of his leave time was not terminated, Defendant responded, "At this point, we are just cutting blades of grass, Jordan."

51. In or about June 2017, Lincoln Financial Group, the short-term disability company, called Plaintiff and demanded he repay the money he had received, stating that Defendant had submitted the last day worked as February 27, 2017, and it should have stated February 15, 2017. Defendant did not correct that date.

52. On or about June 14, 2017, Plaintiff reported to Human Resources Vice President Diane Vavrasek, through email, the disability discrimination he was facing and requested his employment be reinstated.

53. On or about June 14, 2017, Plaintiff also went to Defendant and spoke with the manager in Human Resources, who refused to speak with him in her office.  She informed him, where others could hear, that he had been fired for a failure to report an injury.

54. Plaintiff asked the Human Resources manager why the reason for termination had been changed and she responded that she had "had enough" and called security to escort Plaintiff out.

55. Approximately ten minutes after leaving that facility, Plaintiff was called by Vice President Diane Vavrasek's assistant who stated that they were looking into the issue and would get back to Plaintiff.

56. In or about July 2017, Plaintiff was called by the Vice President and informed that Defendant was upholding Plaintiff's termination.

## COUNT I - DISPARATE TREATMENT AND DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF THE ADA

57. Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs.

58. Plaintiff is disabled, as defined by the ADA, at all relevant times herein and/or Defendant regarded Plaintiff as being disabled.

59. Specifically, Plaintiff suffers from a permanent back condition, bulged disks, and lumbar disk disease.

60. Specifically, Plaintiff's medical conditions substantially limits his major life activities, including: lifting, bending, exercise, sleeping, and working.

8

61. At all relevant times, including prior to Plaintiff's termination, Defendant was aware that Plaintiff had a record of having such impairment.

62. Plaintiff is a qualified individual as defined by the ADA, due to his disability and/or Defendant's perception that Plaintiff is disabled.

63. Plaintiff could perform the essential functions of his job duties for Defendant with or without reasonable accommodation.

64. Defendant unlawfully and intentionally discriminated against Plaintiff based upon his disability and/or because they regarded him as disabled, and acted in bad faith by interfering with, recklessly disregarding, and denying his legal rights when it terminated Plaintiff's employment.

65. Specifically, Defendant's conduct in violation of the ADA included:
    a. refusing to provide Plaintiff with reasonable accommodation, or engage in any interactive process by which to discuss the reasonable accommodation of Plaintiff;
    b. interfering with Plaintiff's short-term disability leave; and
    c. terminating Plaintiff.

66. Plaintiff's disability and/or Defendant's perception that Plaintiff is disabled, was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as monetary and non-monetary benefits.

68. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation,

increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and non-pecuniary losses.

69. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## **COUNT II - RETALIATION IN VIOLATION OF THE ADA**

70. Plaintiff hereby re-alleges and incorporate by reference the allegations contained in the above-stated paragraphs.

71. Plaintiff is disabled and/or Defendant regarded him as disabled, as defined by the ADA, at all relevant times herein.

72. Plaintiff is a member of a protected class because of his disability and/or because he was regarded as being disabled, and because he requested accommodation.

73. Plaintiff requested reasonable accommodation from Defendant due to his medical condition.

74. Plaintiff opposed the unlawful disability discrimination he faced by reporting it to the vice president of Human Resources and requested he be rehired.

75. In retaliation for Plaintiff's reporting his disability/or request for accommodation, Plaintiff was terminated.

76. In retaliation for Plaintiff's reporting the discrimination, he was not rehired.

77. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, including wages and benefit as well as other monetary and non-monetary benefits.

78. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

79. By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

80. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from the conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

**COUNT III – COMMON LAW RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY FOR EXERCISING RIGHTS UNDER THE KANSAS WORKERS COMPENSATION ACT, K.S.A. 44-501 *et seq.***

81. Plaintiff re-alleges and incorporates the allegations contained in above-paragraphs as if fully set forth herein.

82. Plaintiff exercised his rights under the Kansas Workers Compensation Act by requesting to file a workers' compensation claim with Defendant.

83. Defendant had knowledge of Plaintiff's desire to exercise his rights to file for workers' compensation.

84. Defendant terminated Plaintiff's employment retaliation for seeking to exercise his workers' compensation rights under the Kansas Workers Compensation Act.

85. Plaintiff's desire file a workers' compensation claim and exercising his workers' compensation rights under the Kansas Workers Compensation Act was the true reason, or at least a motivating factor, in his termination and failure to be rehired by Defendant.

86. Defendant's actions in retaliating against and terminating Plaintiff was in violation of Kansas public policy which prohibits an employer from retaliating against an employee for exercising his rights under the Kansas Workers' Compensation Act.

87. All actions or inactions of or by Defendant occurred by or through its owners, agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

88. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, loss of past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses.

89. The conduct of Defendant was outrageous and evidenced an evil motive or reckless indifference for the rights of Plaintiff and the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/ Sarah C. Liesen _____
Sarah C. Liesen     KS #26988
sliesen@elmlawkc.com
4051 Broadway, Ste 4
Kansas City, Missouri 64111
Telephone: (816) 301-4056
Facsimile: (816) 463-8449

ATTORNEY FOR PLAINTIFF